**Fred HARDING, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ARROWHEAD INDUSTRIAL and ITT Hartford), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 26, 1997.

Decided Jan. 30, 1998.

---

[Board]:

Lawrence Levin, Jenkintown, for petitioner.

Scott H. Wolpert, Fort Washington, for respondents.

Before COLINS, President Judge, and SMITH and FRIEDMAN, JJ.

SMITH, Judge.

Claimant, Fred Harding, petitions this Court for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) denying Claimant's reinstatement petition, petition for review of medical treatment and/or expenses and penalty petition. On appeal, Claimant questions whether the WCJ's decision should be re-

versed and remanded where he set forth an incorrect legal rationale for rejecting Claimant's medical expert testimony; whether medical evidence is required to have Claimant's benefits reinstated, particularly where the WCJ rejects defense medical testimony; and whether the WCJ's finding that Claimant failed to show a causal connection between his current disability and his 1983 work injury was based on substantial evidence.

## I.

On February 1, 1983, Claimant sustained a work-related lower-back injury while in the employ of Arrowhead Industrial (Employer) as a laborer. Claimant received benefits pursuant to a notice of compensation payable. On October 31, 1984, a supplemental agreement was executed by the parties indicating that as of November 1, 1984, Claimant's disability had resolved into a partial disability allowing him to return to light-duty work. Claimant's benefits were reduced accordingly. The following year, Employer paid a commuted sum to Claimant, representing the balance due under the October 1984 supplemental agreement.

On June 25, 1991, another supplemental agreement was executed indicating that Claimant was temporarily totally disabled as of October 19, 1990, that as of June 1, 1991 Claimant became partially disabled and that as of that date benefits were suspended. On July 12, 1993, Claimant filed a reinstatement petition alleging that he became totally disabled on April 30, 1993 due to persistent pain in his back, neck and leg from the original 1983 injury, which forced him to undergo surgery in June 1993. His reinstatement claim flows from the June 1991 suspension, not the 1985 commutation. In September 1993, Claimant filed a penalty petition alleging that Employer failed to pay expenses for the June 1993 surgery and a petition to review medical treatment and/or expenses, seeking approval of specified medical procedures.

Claimant testified about his current pain and its relationship to the 1983 injury, and he also presented testimony from his treating physicians, Drs. Stephen Paul, Arthur Sher-

wood and John Presper and from a friend, Dr. Raymond Gerfin. Dr. Paul, a neurosurgeon, testified that he first examined Claimant on May 11, 1993 and that when he took Claimant's medical history, he referred to his 1983 injury as an "industrial accident" and said nothing more. The doctor stated that Claimant suffered from a degenerative herniated disc at L5–S1 and that he performed a disc incision and lumbar fusion in June 1993 and a second operation in September 1993 to repair a cyst that had developed in Claimant's low back after the June surgery. Dr. Paul had no prior knowledge about Claimant's 1983 work injury; he reviewed none of Claimant's medical records or diagnostic test results before 1988; and although he thought that a causal connection existed between Claimant's current back problems and his 1983 injury, he stated that a review of prior medical records was required to determine actual causation.

Dr. Sherwood, a family physician, examined Claimant on December 21, 1993, had two follow-up visits on December 29, 1993 and January 1, 1994 and thereafter referred Claimant to Dr. Presper for a second opinion. Dr. Sherwood testified that Claimant continued to suffer low-back pain after his surgeries; however, as to the causal relationship between Claimant's 1983 injury and his current condition, Dr. Sherwood stated: "The only thing that I can do is relate by the history, and you know, there's a ten-year gap there, and I think I would be quite presumptive if I said anything very strong. I just can relate from that they're related in the patient's mind." Dr. Sherwood's Deposition, p. 17. He agreed that a review of Claimant's prior medical records would be required to determine if Claimant's current condition was related to the 1983 injury.

Dr. Presper, also a neurosurgeon, examined Claimant on January 6, 1994. The doctor performed a third surgery on Claimant's back in February 1994, and he stated that Claimant continued to suffer low-back pain. He testified that he had no knowledge of how the 1983 injury occurred or what specific injury Claimant sustained; he did not review any of Claimant's diagnostic test results obtained prior to 1993; he expressed no opinion

concerning a causal connection between Claimant's current condition and the 1983 injury; and he agreed that radiological findings were necessary to confirm the diagnosis of a herniated disc at L5–S1.

Employer's medical expert, Dr. Howard A. Platt, a board-certified neurosurgeon, opined that Claimant's back problems were not related to his original work injury in 1983. Dr. Platt based his opinion on an examination of Claimant and a review of Claimant's medical records, which included normal lumbar myelogram studies and x-rays in January/June 1984 respectively, normal lumbar myelogram study in January 1988 and diagnostic studies and x-rays in 1991 that failed to show a herniated disc. The opinion was further based on the doctor's belief that Claimant's work in his new trade as a woodcarver involved cutting down trees and stacking timber.[1] Claimant, on the other hand, denied Dr. Platt's testimony, stating instead that he ordered his wood from a supplier and that he was sedentary for the most part of his workday. Dr. Gerfin corroborated Claimant's testimony.

The WCJ accepted the testimony presented by Claimant and Dr. Gerfin as credible and convincing as it related to Claimant's woodcarving work. Finding that a causal connection between Claimant's work injury and his current back problems was not obvious, the WCJ rejected Claimant's testimony that his current back problems were, in fact, causally related to the 1983 injury. The WCJ found that Claimant's testimony was not supported by the medical evidence, and he also rejected Dr. Platt's testimony because it was based upon a misunderstanding of information provided to him by Claimant. He found unconvincing and not credible the testimony from Claimant's doctors because they did not review Claimant's prior medical records and diagnostic test results, and they had no knowledge about Claimant's 1983 injury or how it occurred. The WCJ denied and dismissed the petitions, and the Board affirmed.[2]

## II.

Claimant first argues that the WCJ erred by rejecting his medical witnesses' testimony because they had not reviewed Claimant's medical records and diagnostic test results related to treatment of his 1983 injury. Citing *Newcomer v. Workers' Compensation Appeal Board (Ward Trucking Corp.)*, 547 Pa. 639, 692 A.2d 1062 (1997), Claimant contends that because the Workers' Compensation Act[3] does not specifically require a physician to review all medical records of a claimant before offering an opinion, the WCJ was incorrect in basing his decision on this premise.

■ Claimant also cites *Housing Authority of the City of Pittsburgh v. Workmen's Compensation Appeal Board (Sheffield)*, 166 Pa.Cmwlth. 456, 646 A.2d 686, *appeal denied*, 539 Pa. 697, 653 A.2d 1234 (1994), to support the contention that his expert witnesses' testimony was competent and unequivocal and that the WCJ should have accepted their testimony. Medical testimony is considered unequivocal where the medical expert, after providing a foundation, testifies that in his or her belief the facts exist; testimony that states possibilities or that is less than positive may not constitute legally competent evidence to establish causation. *Id.*

■ Employer counters that the WCJ, as the ultimate fact finder, may accept or reject the testimony of any medical witness, whether in whole or in part. *Hills Dept. Store No. 59 v. Workmen's Compensation Appeal Board (McMullen)*, 166 Pa.Cmwlth. 354, 646 A.2d 1272 (1994), *appeal denied*, 540 Pa. 587, 655 A.2d 518 (1995). The WCJ has complete fact-finding discretion as to the credibility of witnesses and evidentiary

---

1. Claimant testified that during his examination, Dr. Platt inquired about Claimant's woodcarving business and how he acquired his wood supply. He believed that Dr. Platt misunderstood the woodcarving process and took his explanation to mean that Claimant actually performed the steps he detailed to Dr. Platt.

2. This Court's scope of review in a workers' compensation appeal is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the findings of fact are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1—1041.4; 2501—2626.

weight, and such findings will not be disturbed if supported by substantial evidence. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.),* 666 A.2d 383 (Pa.Cmwlth.1995). While the WCJ may accept a medical witness' opinion based on facts not within the witness' personal knowledge, those facts, however, must be supported by evidence in the record. *Newcomer.*

 Employer does not challenge the argument that testimony accepted by the WCJ must be legally competent. To the contrary, Employer argues that because the testimony of Drs. Paul and Sherwood showed that they had no knowledge of Claimant's prior relevant medical records and treatment or diagnostic test results, their testimony on causation had no adequate basis. Where the WCJ finds that a medical witness should review other relevant medical evidence before rendering a particular opinion, it is up to the WCJ to determine whether the witness' testimony is worthy of belief. The Court concludes from a review of the witnesses' testimony and other relevant medical evidence that the WCJ had substantial evidence to support his findings and he committed no error when he rejected testimony from Claimant's medical witnesses.

In *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.),* 537 Pa. 223, 642 A.2d 1083 (1994), the Supreme Court held that expert medical evidence is not required in reinstatement proceedings to establish that a work-related injury continues. However, the Supreme Court reiterated that a two-prong standard exists for establishing causation in a reinstatement claim. The claimant must show (1) that his or her earning power is once again adversely affected by the original disability through no fault of the claimant and (2) that the disability giving rise to the claim-

ant's original claim, in fact, continues. Stated another way, the claimant must prove that his or her initial disability has not ceased over time. If an employer fails to present contrary credible evidence, the claimant's testimony, if believed by the WCJ, is sufficient to support a reinstatement of suspended benefits. *Pieper v. Ametek–Thermox Instruments Div.,* 526 Pa. 25, 584 A.2d 301 (1990).

Even though Claimant was not required under *Latta* to produce expert medical evidence or to re-prove the 1983 injury, the WCJ was nonetheless empowered to reject Claimant's testimony as not credible and as unsupported by the medical evidence in the record. While Claimant's actual burden under *Pieper* was to prove that his initial disability continued, or that it had not ceased over time, the WCJ correctly concluded that Claimant failed to satisfy his burden of proof.[4] The WCJ discredited Claimant's testimony that his original injury continued over a ten-year period, and he found that various diagnostic test results from 1983 to 1991 did not disclose that Claimant suffered from a herniated disc. The WCJ found that the condition was first diagnosed in 1993. Based upon substantial evidence in the record, the WCJ accordingly denied the reinstatement petition as well as the review petition and penalty petition. Because the record supports the WCJ's decision, the Court affirms the Board's order affirming the WCJ.

### ORDER

AND NOW, this 30th day of January, 1998, the order of the Workers' Compensation Appeal Board is affirmed.

---

4.  *See Riley Welding & Fabricating, Inc. v. Workmen's Compensation Appeal Board (Degroft),* 147 Pa.Cmwlth. 448, 608 A.2d 598 (1992) (court's decision in *Bechtel Power Corp. v. Workmen's Compensation Appeal Board (Casey),* 115 Pa. Cmwlth. 374, 540 A.2d 10, *appeal denied,* 520 Pa. 590, 551 A.2d 217 (1988), reduces a claimant's burden of proof where subsequent injury is obviously causally related to the work-related injury for which benefits were initially paid). In *Latta* the Supreme Court noted that a claimant's burden is qualitatively less difficult where a short

period of time has passed and the injury is one that has obviously continued. The opposite view would prevail here. The injury in the case sub judice was not obviously related to the work-related 1983 injury for which benefits were paid.

Further, even if Claimant were required to present unequivocal medical evidence, as the WCJ incorrectly concluded, the result would be the same. None of Claimant's medical witnesses offered legally competent evidence to establish causation. *Housing Authority of the City of Pittsburgh.*